**Pursuant to Ind.Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.**



**FILED**

Feb 23 2012, 9:21 am

CLERK
of the supreme court,
court of appeals and
tax court

ATTORNEY FOR APPELLANT:

**R. PATRICK MCGRATH**
Alcorn Goering & Sage, LLP
Madison, Indiana

ATTORNEYS FOR APPELLEE:

**GREGORY F. ZOELLER**
Attorney General of Indiana

**GEORGE P. SHERMAN**
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | | |
|---|---|---|
| CHARLES SMITH, | ) | |
| | ) | |
| Appellant-Defendant, | ) | |
| | ) | |
| vs. | ) | No. 58A01-1104-CR-191 |
| | ) | |
| STATE OF INDIANA, | ) | |
| | ) | |
| Appellee-Plaintiff. | ) | |

APPEAL FROM THE OHIO CIRCUIT COURT
The Honorable James D. Humphrey, Judge
Cause No. 58C01-1004-FA-1

**February 23, 2012**

**MEMORANDUM DECISION - NOT FOR PUBLICATION**

**BARNES, Judge**

**Case Summary**

Charles Smith appeals the twenty-year sentence imposed following his conviction for Class B felony dealing in a schedule II controlled substance. We affirm.

**Issue**

The sole issue before us is whether Smith's sentence is inappropriate.

**Facts**

The evidence, as revealed in the probable cause affidavit and testimony at Smith's sentencing hearing, is that after conducting a surveillance operation, police in Ohio County arrested Dylan Woodruff on March 25, 2010, for dealing methadone and oxycodone, both schedule II controlled substances. Woodruff, who sold drugs in the Rising Sun area daily, told police that he obtained his drugs from Smith at Smith's home in Switzerland County. Woodruff would purchase approximately $1100 worth of oxycodone pills from Smith every day or every other day.

Smith, in turn, was driving to Detroit, Michigan, at least three times per month to obtain his supply of drugs, purchasing approximately 300 oxycodone and eighty methadone pills on each trip at a cost of $10,000 to $15,000. Woodruff had been obtaining drugs from Smith and re-selling them for over a year. After receiving Woodruff's statement, police searched Smith's house in Switzerland County. There, police found over $10,000 in cash, a loaded nine millimeter handgun on a night stand, and approximately 220 oxycodone pills and thirty-five methadone pills divided into five cigarette cellophane packages.

On April 16, 2010, the State charged Smith in Ohio County with one count of Class A felony dealing in a schedule II controlled substance and one count of Class A felony conspiracy to commit dealing in a schedule II controlled substance. The reason for the A felony filings was that the alleged dealing (apparently by Woodruff) took place within 1000 feet of a family housing complex. On November 9, 2010, Smith pled guilty to one count of Class B felony dealing in a schedule II controlled substance, with sentencing left to the trial court's discretion. Finding that Smith was "a major dealer in illegal drugs," the trial court sentenced him to the maximum term of twenty years. App. p. 164. Smith now appeals.

## Analysis

Smith contends that his sentence is inappropriate under Indiana Appellate Rule 7(B) in light of the nature of the offense and his character. Although Rule 7(B) does not require us to be "extremely" deferential to a trial court's sentencing decision, we still must give due consideration to that decision. Rutherford v. State, 866 N.E.2d 867, 873 (Ind. Ct. App. 2007). We also understand and recognize the unique perspective a trial court brings to its sentencing decisions. Id. "Additionally, a defendant bears the burden of persuading the appellate court that his or her sentence is inappropriate." Id.

The principal role of Rule 7(B) review "should be to attempt to leaven the outliers, and identify some guiding principles for trial courts and those charged with improvement of the sentencing statutes, but not to achieve a perceived 'correct' result in each case." Cardwell v. State, 895 N.E.2d 1219, 1225 (Ind. 2008). We "should focus on the forest—

3

the aggregate sentence—rather than the trees—consecutive or concurrent, number of counts, or length of the sentence on any individual count." Id. Whether a sentence is inappropriate ultimately turns on the culpability of the defendant, the severity of the crime, the damage done to others, and myriad other factors that come to light in a given case. Id. at 1224. When reviewing the appropriateness of a sentence under Rule 7(B), we may consider all aspects of the penal consequences imposed by the trial court in sentencing the defendant, including whether a portion of the sentence was suspended. Davidson v. State, 926 N.E.2d 1023, 1025 (Ind. 2010).

As Smith emphasizes, he received the maximum possible sentence for a Class B felony, twenty years, with no time suspended. Generally, "a trial court should reserve maximum sentences for classes of offenses that constitute the worst of the worst." Hamilton v. State, 955 N.E.2d 723, 727 (Ind. 2011). "[C]ases constituting the worst of the worst are such that we trust our trial courts will know them when they see them." Id. The class of offenses and offenders that may warrant a maximum sentence "encompasses a considerable variety of offenses and offenders." Buchanan v. State, 767 N.E.2d 967, 973 (Ind. 2002).

Smith directs us to a number of factors that he cites as evidence of his good character. For example, although he has a criminal history, it is extremely minimal in comparison to the present offense; he has a 1996 juvenile delinquency adjudication criminal mischief and a 2000 adult conviction for reckless driving. Several friends and family members provided letters testifying to Smith's overall good character. Smith

4

apparently led a largely law-abiding life until suffering a back injury a few years ago, which led to a dependency on painkillers and, eventually, his foray into drug dealing. Smith also pled guilty, which generally reflects positively upon his character.[1]

Nevertheless, we agree with the trial court that Smith's offense falls generally into the class of a worst case scenario for Class B felony dealing in a schedule II controlled substance. There is no minimum quantity of drug that must be dealt in order to be guilty of this offense. See Ind. Code § 35-48-4-2(a). In other words, Smith could have been found guilty of this offense if he had dealt just one oxycodone or methadone pill.

Smith, of course, did much more than that. For over a year, at the least, Smith was funneling approximately 380 oxycodone and methadone pills, worth $10,000 to $15,000, into southeastern Indiana from Detroit nearly every week. Smith was supplying Woodruff in his daily selling of drugs in Rising Sun and, according to Smith's statement to police, he was supplying drugs to two other people in the area as well. The search of Smith's residence uncovered indicia of a substantial ongoing drug dealing operation,

---

[1] Both the trial court and the State suggest that Smith's decision to plead guilty was not entitled to much weight because in exchange for the plea the State did not pursue a Class A felony conviction against him. It appears Smith provided the drugs to Woodruff at Smith's home in Switzerland County, and Woodruff in turn would sell the drugs near a family housing center in Ohio County. On the record before us, it is unclear whether a conviction for Class A felony dealing, based on dealing within 1000 feet of a family housing center as alleged in the information, could have been sustained against Smith. See Cockrell v. State, 743 N.E.2d 799, 808 (Ind. Ct. App. 2001) (reversing conviction for Class A felony dealing in cocaine within 1000 feet of a school and reducing it to a Class B felony where drug supplier gave drugs to dealer, who in turn sold drugs to a third party within 1000 feet of a school, but there was no evidence supplier knew where or to whom dealer would sell drugs). The mere fact that the State dismisses more serious allegations against a defendant in exchange for a guilty plea does not necessarily mean the plea is entitled to less or no mitigating weight. See Marlett v. State, 878 N.E.2d 860, 866-67 (Ind. Ct. App. 2007), trans. denied.

including the individually wrapped packages of pills, over $10,000 in cash, and a loaded handgun. This evidence of such a high-volume, high-cash flow operation belies Smith's contention that he only was selling drugs to support his own habit. Smith was no mere street-level dealer, but instead was a significant supplier of controlled substances to other dealers. In sum, despite some positive character evidence on Smith's behalf, the nature of the offense here is so egregious that we cannot say the maximum sentence of twenty years is inappropriate.

## Conclusion

Smith's sentence of twenty years for Class B felony dealing in a schedule II controlled substance is not inappropriate. We affirm.

Affirmed.

KIRSCH, J., and BRADFORD, J., concur.